IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PREFERRED CAPITAL, INC., | ) | CASE NO. 1:04CV2511 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) | |
| | ) | |
| AETNA MAINTENANCE, INC., | ) | MEMORANDUM OPINION |
| | ) | Dkt. # 22 |
| Defendant. | ) | |
| | ) | |

This matter is before the court on consent of the parties. Pending is the motion of defendant Aetna Maintenance, Inc. ("Aetna") to dismiss pursuant to Fed. Rules of Civil Pro. 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6). The motion is opposed.[1] For the following reasons, the court grants defendant's motion to dismiss for lack of personal jurisdiction (Rule 12(b)(2)).

I.

---

[1] Portions of plaintiff's brief refer to errors made by "the trial court." This court assumes that those portions were excerpted from an appellate court brief.

The undisputed facts are as follows. Aetna entered into an Equipment Rental Agreement with NorVergence, Inc.("NorVergence") pursuant to which NorVergence would lease certain telecommunications services to Aetna (the "rental agreement"). Aetna signed the rental agreement on January 13, 2004, and NorVergence signed i on February 3, 2004. Aetna is a Florida corporation with its principal place of business in Tampa, Florida. NorVergence is a New Jersey corporation with its principal place of business in Newark, New Jersey. Subsequent to the signing of the rental agreement, NorVergence delivered to Aetna a box designated "The Matrix 2003" which NorVergence represented to contain valuable proprietary software designed to reduce Aetna's overall telecommunications expenses. Declaration of Jeffrey Malin ("Malin Decl.") at ¶¶ 14, 15.

On February 4, 2004, the day after NorVergence signed the rental agreement, Aetna was given notice that the rental agreement had been "transferred" to plaintiff, Preferred Capital, Inc. ("PCI"), with all payments to be made directly to that company. Other than this change in payments, all terms and conditions were to remain unchanged. PCI is an Ohio corporation with its principal place of business in Brecksville, Ohio.

Unknown to Aetna when it signed the rental agreement, NorVergence and PCI had entered into a Master Program Agreement on September 30, 2003 (the "master agreement") pursuant to which NorVergence could offer rental agreements to PCI, PCI could accept or reject the rental agreements, and if it accepted an agreement, PCI would pay NorVergence for that agreement. Under the master agreement NorVergence assigned all of "its rights, title and interest in and to the Rental Agreement and Equipment including all monies due and to become due under the Rental Agreement, but none of its obligations under the Rental Agreement . . . ."

2

NorVergence was forced into Chapter 11 bankruptcy protection in July 2004 and ceased to provide any services thereafter. PCI continued to seek payments under the rental agreement despite the lack of service and despite Aetna's inability to use the NorVergence product. When Aetna failed to make payments, this lawsuit ensued.

II.

PCI argues that plaintiff is properly before this court pursuant to a forum selection clause set forth in the rental agreement. That provision, found in very small print,[2] reads as follows:

> APPLICABLE LAW. You understand that the Equipment may be purchased for cash or it may be rented. By signing this Rental, you acknowledge that you have chosen to rent the Equipment from us for the term of the Rental, and that you have agreed to pay the specified Rental Payment and other fees described herein. We both intend to comply with applicable laws. If it is determined that your Rental Payment results in a payment greater than would be allowed by applicable law, then any excess collected by us will be applied to any outstanding balance due and owing under this Rental. In no event will we charge or receive or will you pay any amounts in excess of that allowed by applicable law. This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations *and all legal actions relation to this Lease shall be venued exclusively in a state or federal court located with that State, such court to be chosen at Rentor or Rentor's assignee's sole option.* You hereby waive right to a trial by jury in any lawsuit in any way relating to this rental.

Rental Agreement at 2 (emphasis added). Thus buried in the middle of a paragraph which 1) is captioned "Applicable Law" with no reference to jurisdiction and 2) covers several issues having nothing to do with "applicable law" is the requirement that Aetna submit to the jurisdiction of any state or federal court in

---

[2]The court notes that other statements in the rental agreement which require plaintiff to take certain actions or waive certain rights are printed in capital letters.

3

which NorVergence or its unidentified assignee has its "principal."

The master agreement between PCI and NorVergence also contains a choice of law provision:[3]

> 12. **Governing Law, Jurisdiction and Venue.** [4] The parties agree that this Agreement shall be deemed to be fully executed and performed in the State of Ohio and shall be governed by, construed and enforced in accordance with the laws of the State of Ohio and Cuyahoga County, Ohio. The parties agree that this Agreement shall be treated at [sic] though executed and performed in Brecksville, Ohio and any legal actions relating to this Agreement must be instituted in the courts of Cuyahoga County, Ohio or the United States District Court for the Northern District of Ohio, which shall have exclusive jurisdiction. The parties hereby waive right to a trial by jury in any lawsuit in any way relating to this Agreement. The prevailing party shall be awarded its reasonable attorney's fees and costs in any litigation to enforce this Agreement.

Master Program Agreement at ¶ 12. In contrast to the provision in the rental agreement, 1) the caption includes specific reference to Jurisdiction, 2) specifically identifies Cuyahoga County and Northern District of Ohio courts, and 3) does not include extraneous matters.

Aetna argues that the choice of forum provision in the rental agreement is void and unenforceable because it gave Aetna no notice of the forum to which it was consenting. PCI responds that a forum selection clause in a commercial contract is prima facie valid and Aetna has failed in its burden to show that the provision is either unreasonable or unjust.

A. Validity of forum selection clause

"[A]bsent some compelling and countervailing reason [a choice of forum clause] should be honored by the parties and enforced by the courts." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.

---

[3]The master agreement, in contrast to the rental agreement, is printed in standard size type.

[4]Unlike the rental agreement, the paragraph heading is in bold type.

1, 12 (1972).[5] In the case before it, involving an American company, a German company, and a vessel which would be towed to Italy in international waters, the *Bremen* Court recognized the important role of a forum selection clause. The inclusion of a clause specifying the court to resolve disputes relieved uncertainty which might otherwise arise under such circumstances:

> Manifestly much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where the Bremen or Unterwester might happen to be found. **The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce and contracting.**

*Id.* at 13-14 (emphasis added). In designating a specific court, the London Court of Justice, "the clause was an effort to eliminate all uncertainty as to the nature, location, and outlook of the forum in which these companies of differing nationalities might find themselves." *Id.* at n.15. Further the clause was an effort to "obtain certainty as to the applicable substantive law." *Id.*

In addition the Court could find no evidence of overreaching. Zapata had made numerous changes to the agreement, an indication to the Court that the forum selection clause had been freely bargained. According to the Court, "[T]his was not simply a form contract with boilerplate language that Zapata had no power to alter." The fact that Zapata had made no change to the forum selection clause while making other changes persuaded the Court that there was no overreaching.

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the Court "refined" the analysis of *Bremen* in analyzing the reasonableness of a forum selection clause which designated Florida

---

[5]A court may apply either state or federal law in determining whether a forum selection clause is enforceable because the standards are the same. *General Electric Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095 n.3 (6th Cir. 1994).

as the jurisdictional site. The Court recognized that although the Shutes, the cruise ship passengers, did not argue lack of notice of the inclusion of a forum selection clause, in reality they probably did not know the clause was in their passenger agreement. The Court further acknowledged that the contract at issue was not one subject to negotiation by a cruise ship passenger. Nonetheless, the Court found the forum selection clause reasonable because 1) a cruise line, which carries passengers from many different fora, has an interest in limiting the courts in which it could be subject to suit, 2) by establishing a specific place in which actions could be filed, the cruise line limited the likelihood of litigating the forum issue repeatedly, and 3) passengers would benefit because the cruise line would pass its litigation savings on to its customers. The common theme in *Bremen* and *Shute* is the value of certainty to the contracting parties: parties involved in multinational agreements, potentially subject to litigation in many different fora, or subject to litigation in a foreign court would know prior to litigation the forum in which suit was properly commenced.

Thus the major flaw in the forum selection clause in the rental agreement: because there is no specific forum designated, there is no certainty as to site for litigation. Aetna could have been required to litigate in Alaska, Mexico or Timbuktu, depending upon NorVergence's choice of an assignee. The uncertainty was unreasonable and unnecessary here. Four months prior to the execution of the rental agreement, NorVergence and PCI set Ohio as the site for litigation arising out of the master agreement, an agreement which provides for no more than the assignment of rental agreements from NorVergence to PCI. The day after the execution of the rental agreement NorVergence gave Aetna notice of the assignment of the rental agreement to PCI. NorVergence knew full well when it presented a form rental agreement to Aetna that the forum for litigation would be the state or federal courts of Ohio yet it did not inform Aetna of that fact.

Had NorVergence identified Ohio as the forum for litigation involving its disputes with Aetna or its' assignee's disputes with Aetna, the forum selection clause would have been enforceable. Alternatively NorVergence could have disclosed to Aetna its master agreement with PCI.[6] Finally NorVergence could have put the forum selection clause in larger, bold print instead of burying it in the middle of a paragraph of very small print. Because the rental agreement does not identify a specific forum, the forum selection clause in that agreement does not serve the purposes identified as reasonable by the Supreme Court. Moreover, enforcement of the forum selection clause here would be unjust. NorVergence knew that its assignee would commence litigation in Ohio and yet failed to make that disclosure in its rental agreements. This court will not permit PCI to take advantage of the lack of disclosure.

The court concludes that the forum selection clause is unenforceable. Therefore, the issue is whether this court has personal jurisdiction over Aetna.

B. Existence of personal jurisdiction

The party seeking assertion of personal jurisdiction has the burden of showing that such jurisdiction exists. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). If a court considering a Rule 12(b)(2) motion to dismiss does not conduct an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Nevertheless, "in the face of a properly supported motion

---

[6]PCI argues that the forum selection clause should be upheld as a matter of public policy because it allows the leasing business to operate without an assignee being forced to litigate claims all over the country. The court would agree with this argument IF NorVergence had not failed to disclose what it knew at the time the rental agreement was signed: the assignee would be PCI and PCI would commence any action against Aetna in Ohio.

for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991), rev'd and remanded on other grounds. The relaxed, prima facie standard, moreover, "loses some of its significance . . . where . . . the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction." *International Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).

A federal court determines whether it has personal jurisdiction over a nonresident defendant by applying the law of the forum state within the constitutional limits of due process. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). "A valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process." *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). The Ohio Supreme Court has held that Ohio's long-arm statute does not extend to the limit of the due process clause of the federal constitution. *See, e.g. Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235-36, 236 n.1, 638 N.E.2d 541, 544-45, 545 n.1 (1994), and the Sixth Circuit has acknowledged that holding, *see Cole*, 133 F.3d at 436.[7]

The focus of the federal constitutional limits of jurisdiction is on "minimum contacts":

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

---

[7] The holding appears to be limited to the portion of the Ohio statute relevant here, the "transacting business" portion.

8

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1166 (6th Cir. 1988). "In broad terms, the assertion of personal jurisdiction satisfies due process if 'the defendant purposefully avails itself of the privilege of conducting activities within the forum State,' . . . such that it 'should reasonably anticipate being haled into court there.'" *Nationwide Mutual Ins.*, 91 F.3d at 793 (citations omitted). The Sixth Circuit has developed the following test for determining whether specific jurisdiction exists as to a defendant:

> First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair.

*Cole*, 133 F.3d at 436.

Ohio Revised Code § 2307.382, the Ohio long-arm statute, states in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state . . .

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

This section works together with Ohio R. Civ. Pro. 4.3(A)(1), dealing with service of process. Rule 4.3(A)(1) authorizes out-of-state service of process on a defendant who is "[t]ransacting any business in this state . . . ." Together these provisions "authorize a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction . . . ." *Goldstein*, 70 Ohio St. 3d at 235, 638 N.E.2d at 544.

9

The phrase "[t]ransacting any business" is so broad that cases resolved pursuant to the statute and accompanying rule have been resolved on "'highly particularized fact situations, thus rendering any generalization unwarranted.'" *U.S. Sprint Communs. Co., Ltd. P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 185, 624 N.E.2d 1048, 1052 (1994) (quoting Ohio Jurisprudence 3d, v.22, 430 (1980)). "The test for minimum contacts is not susceptible to mechanical application; rather, the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present." *Wayne County Bur. of Support v. Wolfe*, 71 Ohio App. 3d 765, 769, 595 N.E.2d 421, 424 (1991). As used in §2307.382(A)(1) and R. 4.3(A)(1), "transact" "means to prosecute negotiations; to carry on business; to have dealings . . . ." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477, 480 (emphasis omitted). The issue is not whether a transaction made an impact on Ohio, but merely whether the defendant transacted business in Ohio. *Hoover Co. v. Robeson Indus. Corp.,* 904 F. Supp. 671, 674 (N.D. Ohio 1995).

The Malin Declaration offers the following uncontested facts. Aetna has not transacted, prosecuted, carried on, or negotiated any business in Ohio in the last 10 years. Aetna has not taken advantage of any privileges or benefits of Ohio laws within the past 10 years. Aetna has never advertised, had a telephone listing or had a bank account in Ohio. Aetna owns no property in Ohio and has never contracted to supply goods or services in Ohio. Aetna is not licensed to do business in Ohio. The rental agreement was signed in Florida. The rental agreement did not require performance of any terms of the agreement in Ohio. Aetna did not enter into a contract with PCI and had no knowledge of the master agreement.

Based on these undisputed facts, the court concludes that Aetna has not "transacted"

business in Ohio and therefore the court lacks personal jurisdiction over the defendant.

III.

For the above stated reasons, Aetna's motion to dismiss for lack of personal

jurisdiction is granted.

Dated: June 14, 2005                             s:\Patricia A. Hemann
                                                 Patricia A. Hemann
                                                 United States Magistrate Judge